UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TRYSHATEL MCCARDELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-439 |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOUSING AND URBAN | § | |
| DEVELOPMENT, *et al*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

One of the last major laws enacted during the Civil Rights Era, the Fair Housing Act has played a critical role in combating housing discrimination since its enactment in 1968.  Courts have applied the Act not only in cases involving individual "refus[als] to sell or rent" on the basis of race or other protected classes, 42 U.S.C.  § 3604(a), but also in cases challenging broader practices such as "mortgage 'redlining,' insurance redlining, racial steering, exclusionary zoning decisions, and other actions by individuals or governmental units which directly affect the availability of housing to minorities."  *Southend Neighborhood Improvement Ass'n v. Cnty. of St. Clair*, 743 F.2d 1207, 1209 (7th Cir. 1984).

That final category includes challenges to public housing decisions.  Yet despite the robust body of case law in this area, this case involves a section of the

Act concerning public housing that no court has previously addressed.  A statute enacted as part of the Quality Housing and Work Responsibility Act of 1998 provides that:

> Notwithstanding any other provision of law, replacement public housing units for public housing units demolished in accordance with this section may be built on the original public housing location or in the same neighborhood as the original public housing location if the number of the replacement public housing units is significantly fewer than the number of units demolished.

42 U.S.C. § 1437p(d).  Defendants contend that this "notwithstanding any other provision of law" clause bars a Fair Housing Act claim challenging plans to rebuild public housing on sites in Galveston where longstanding housing units were demolished in the aftermath of Hurricane Ike.

## I.   BACKGROUND

### A.  The Demolition

The novel issue concerning application of this statute arises, as novel issues often do, from unusual facts.  In 2008, Hurricane Ike wreaked havoc on Galveston, causing substantial damage to public housing on the island.  The next year, the City of Galveston issued Notices of Unsafe Conditions finding that the public housing was "unfit for human occupancy."  That prompted the Galveston Housing Authority (GHA) to send a letter to HUD announcing its intent to demolish two public housing sites (Oleander Homes and Palm Terrace) without following HUD's full regulatory process.   Lone Star Legal Aid, a nonprofit legal

organization that represents low-income individuals, filed a complaint with HUD opposing the plan to demolish the units outside of the ordinary process.  This concern was soon resolved when Lone Star and the GHA entered into a settlement agreement in March 2009.  As part of that settlement, GHA agreed to build replacement housing at the same sites.

With Lone Star's concerns resolved, GHA underwent the regulatory process by submitting to HUD an application for the demolition of 136 units at Cedar Terrace and 133 units at Magnolia Homes.  In letters dated April 14, 2010 and June 17, 2010, HUD approved the demolition.  Docket Entry No. 144-1 at 5–16.  The April letter stated that "[b]ased upon our review, and finding that the requirements of 24 C.F.R., Part 970 and Section 18 of the Act have been met, the proposed demolition . . . is hereby approved."[1]  *Id.* at 15.

### B.  The Plan To Rebuild

In the years following the demolition, the plan to rebuild public housing in Galveston generated much controversy.  GHA's development proposal—for which HUD has not yet granted final approval—seeks to develop 49 public housing units at Cedar Terrace, along with 60 market-rate units and 13 project-based voucher units.  At the Magnolia Homes site, the plan is to rebuild 64 public housing units, along with 78 market-rate units and 18 project-based units.

---

[1] These letters refer to Magnolia Homes, but Cedar Terrace was included as part of Magnolia Homes for administrative purposes.

3 / 13

### C. This Lawsuit

After efforts to persuade local government to not rebuild public housing in Galveston failed, individuals and the Galveston Open Government Project filed this lawsuit seeking to enjoin the rebuilding.  A wave of motions to dismiss and amended complaints pared down the lawsuit.  The defendants that remain are the GHA, City of Galveston, HUD and its Secretary.[2]  The sole plaintiff whom the Court found had standing to sue is Tryshatel McCardell.  Docket Entry No. 105.

And only one claim remains.  This Court dismissed the Administrative Procedure Act claim asserted against HUD because it did not challenge a final agency action.  Docket Entry No. 129.   McCardell voluntary dismissed her constitutional claims after concluding that there was insufficient evidence of intentional discrimination.  Docket Entry No. 135 ¶2.  That leaves the claim asserted under what is generally referred to as the "Fair Housing Act," but technically is Title VIII of the Civil Rights Act.  The Third Amended Complaint alleges that the plan to rebuild public housing on the Cedar Terrace and Magnolia Home sites perpetuates "racial segregation in the City of Galveston and Galveston County and fail[s] to . . . affirmatively . . . further fair housing opportunities in violation of Plaintiffs' rights under the Fair Housing Act."  Docket Entry No. 118 at ¶38.

---

[2] Shaun Donovan was HUD Secretary when the case was filed and remains listed as a defendant. Recently, however, Julian Castro was appointed to that position.

McCardell filed a motion for a preliminary injunction. After reviewing the briefing and applicable law and prior to the hearing on that motion, the Court notified the parties that section 1437p(d)'s "notwithstanding" provision prevented McCardell from establishing a substantial likelihood of success on her Fair Housing Act claim. Docket Entry No. 130. McCardell then dismissed her constitutional claim, making a hearing on the injunction motion unnecessary. Docket Entry No. 135. After a conference call in which McCardell's counsel expressed her desire for a definitive ruling on the application of section 1437p(d) in order to facilitate an appeal, the Court set a schedule for the Defendants to file a motion for summary judgment, which is now fully briefed.[3]

---

[3] The Federal Defendants had raised the section 1437p(d) issue in response to McCardell's motion for preliminary injunction. It was not squarely raised in their Rule 12(b) motion to dismiss, which is why the Court requested summary judgment briefing on the issue.

The Federal Defendants' Rule 12 motion does seek dismissal of the Federal Defendants on sovereign immunity grounds. Because this suit only seeks injunctive relief (sovereign immunity would bar a claim against the United States for damages under the Fair Housing Act), section 702 of the Administrative Procedure Act waives sovereign immunity. *See* 5 U.S.C. § 702; *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006) ("There is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA. The sentence waives sovereign immunity for '[a]n action in a court of the United States seeking relief other than money damages,' not for an action brought under the APA."); *Vander Zee v. Reno*, 73 F.3d 1365, 1371 (5th Cir. 1996) ("Section 702 of the APA provides for judicial review of 'agency action,' and waives sovereign immunity for claims 'seeking relief other than money damages.'"); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("APA's waiver of sovereign immunity applies to any suit [for injunctive relief] whether under the APA or not."); *see also Bowen v. Massachusetts*, 487 U.S. 879, 899 (1988) ("Moreover, while reiterating that Congress intended 'suits for damages' to be barred, both Reports go on to say that 'the time [has] now come to eliminate the sovereign immunity defense in *all equitable actions for specific relief* against a Federal agency or officer acting in an official capacity.'" (quoting *Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1447 (D.C. Cir. 1985) (quoting the APA's legislative history)) (emphasis in original)).

## II.   ANALYSIS

Defendants argue that summary judgment is warranted because section 1437p(d)'s "notwithstanding any other provision of law" clause precludes a claim under Title VIII of the Civil Rights Act that challenges the rebuilding of "significantly fewer" public housing units than existed on a site prior to a HUD-approved demolition.  McCardell challenges the application the "notwithstanding" provision on two levels.  First, she contends the requirements for section 1437p(d) are not satisfied because the demolition was not approved pursuant to that statute.  Second, she argues that even if its conditions are met, the "notwithstanding" provision "should not be read to render the Fair Housing Act meaningless." Docket Entry No. 110 at 2.

### A.  Does Section 1437p(d) Apply?

Section 1437p(d) applies to public housing rebuilt on a demolished site when (1) the demolition was "in accordance with this section" and (2) "if the number of the replacement public housing units is significantly fewer than the number of units demolished."  42 U.S.C. § 1437p(d).

In an argument not raised until she filed a motion to reconsider the Court's preliminary injunction ruling, McCardell contends that the demolition was not

---

Of course, even if the Federal Defendants enjoy sovereign immunity from this suit, the claims against the City of Galveston and GHA would require the Court to address the section 1437p(d) issue.

pursuant to section 1437p, but instead was accomplished pursuant to section 1437v.  Section 1437v allows HUD to award grants to "carry out revitalization programs for severely distressed public housing."  42 U.S.C. § 1437v(d)(1).  If it governed the demolition process, it might help McCardell avoid the "notwithstanding" defense because it states that "[s]everely distressed public housing demolished pursuant to a revitalization plan shall not be subject to the provisions of section 1437p of this title."  42 U.S.C. § 1437v(g).

But McCardell offers no evidence indicating that the demolition of Cedar Terrace and Magnolia Homes was undertaken pursuant to section 1437v.  Section 1437v involves the awarding of grants, and nothing in the approval letters indicates that approval of the demolition plan was associated with the awarding of a grant.  In addition, a HUD official who administers section 1437v programs states that GHA's demolition was not pursuant to a competitive bidding process administered under that statute.  Docket Entry No. 144-2 ¶¶12–15.  Finally, despite section 1437v's requirement that both HUD and the funding recipient publicly disclose projects awarded under that statute, *see* 42 U.S.C. §§ 1437v(k–l), McCardell has not identified any such disclosures.

This discussion about the lack of any evidence implicating section 1437v is unnecessary, however.  The HUD demolition approval letters leave no doubt that the demolition was approved pursuant to section 1437p.  The April 15, 2010 letter

first states that HUD has "reviewed the application and find it to be consistent with Section 18 of the Act."  Docket Entry No. 144-1 at 15.  It then states "[b]ased upon our review, and finding that the requirements of 24 CFR, Party 970 and *Section 18 of the Act* have been met, the proposed demolition . . . is hereby approved."  *Id.* (italics added).   The June 17, 2010 letter again refers to Section 18: "The Department further acknowledges that GHA submitted the above referenced applications to formalize this demolition and to evidence that the demolition was in compliance with *Section 18 of the Act* and 24 CFR Part 970."  Docket Entry No. 144-1 at 8 (italics added).

Where is Section 18 of the United States Housing Act codified?  At Title 42 United States Code, Section 1437p(d).   *See* Veterans Affairs and HUD Appropriations Act, Pub. L. No.  105-276, 112 Stat. 2461, 2573 (1998) (including as part(d) under "Sec. 18. Demolition and Disposition of Public Housing" the same language that appears at 42 U.S.C. § 1437p(d))*; see also, e.g.*, 24 C.F.R. § 906.35 ("The provisions of section 18 of the 1937 Act (42 U.S.C. 1437p) . . .").  The record thus indisputably establishes that the demolition of Cedar Terrace and Magnolia Homes was approved pursuant to section 1437p.[4]

---

[4] Because the approval letters unambiguously state that approval of the demolition was granted pursuant to "Section 18," which is codified as section 1437p, any discovery on this issue would be futile.  Moreover, McCardell's request for that discovery in her motion for reconsideration is at odds with her earlier recommendation that the Court issue a final ruling on the effect of 42 U.S.C. § 1437p in order to facilitate an appeal.   The Court and parties relied on that representation in setting a schedule for summary judgment briefing.

McCardell does not contest the other condition of the "notwithstanding" statute: whether the rebuilding will result in "significantly fewer" new public housing units "than the number of units demolished."  42 U.S.C. § 1437p.   HUD regulations defining the ambiguous term "significantly fewer" provide that the standard is satisfied if the new public housing units are not more than 50 percent of the number of public housing units in the original development.   24 C.F.R. § 905.602(d)(5)(i).   McCardell does not challenge the reasonableness of this regulation in defining "significantly fewer" or dispute that the number of public housing units in the proposed redevelopment falls under its 50 percent threshold.

Section 1437p(d) thus applies in this case, and the Court will turn to what has been McCardell's primary argument, which challenges the preemptive force of the "notwithstanding" language.

## B. Does Section 1437p(d)'s "notwithstanding any other provision of law" language supersede other Housing Act statutes?

McCardell argues that section 1437p(d) "should not be interpreted to allow Defendants to avoid their responsibilities under the Fair Housing Act."   Docket Entry No. 110 at 2.   Whatever merit that argument may have from a policy perspective, the question before the Court is one of congressional intent.

That intent is evident from the statute's broad language that public housing can be rebuilt on a demolished site if it results in significantly fewer units than the number of units demolished "notwithstanding any other provision of law."   The

Supreme Court has explained that "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (citation omitted).  It also noted that "Courts of Appeals generally have 'interpreted similar "notwithstanding" language . . . to supersede all other laws, stating that '[a] clearer statement is difficult to imagine.'" *Id.* (quoting *Liberty Mar. Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) (internal citations omitted)); *see also United States v. DeCay*, 620 F.3d 534, 540 (5th Cir. 2010) ("[T]he Supreme Court has recognized that the use of a 'notwithstanding' clause signals Congressional intent to supersede conflicting provisions of any other statute.").

Two difficult issues that sometimes arise with "notwithstanding" statutes are absent here.  The "notwithstanding" statute is not being asserted against a subsequently enacted provision of the Housing Act, but one that was on the books more than a quarter century before Congress added the language in section 1437p(d).  *Compare New Jersey Air Nat. Guard v. Fed. Labor Relations Auth.*, 677 F.2d 276, 283 (3d Cir. 1982) ("'*Notwithstanding any other provision of law . . .*' A clearer statement is difficult to imagine: section 709(e) must be read to override any conflicting provision of law in existence at the time that the Technician Act was enacted.  Application of this statement is less certain, however, with respect to

a statute such as the Labor–Management Act, adopted *after* the Technician Act." (italics in original)).  And it is being asserted against a core provision of federal housing law of which Congress would have undoubtedly been aware when it enacted the "notwithstanding" provision, not against a statute outside of the housing context.  *Compare Oregon Natural Res. Council v. Thomas*, 92 F.3d 792, 796 (9th Cir. 1996) (holding that "notwithstanding" provision in federal statute involving timber sales "is best interpreted as requiring the disregard only of environmental laws").  The argument that the "notwithstanding" provision applied outside of the Housing Act to bar McCardell's constitutional claims asserted under sections 1981, 1982, and 1983 had concerned the Court for precisely this reason,[5] but McCardell's voluntary dismissal of those claims avoids that issue.

The plain language of the broad "notwithstanding" provision thus warrants summary judgment in favor of Defendants on the Fair Housing Act claim. Recourse to legislative history is not warranted in light of the unambiguous text, but the Court will mention it only to provide a possible answer to the policy concerns that McCardell raises.  A Senate Committee Report on the bill that led to the enactment of the original, temporary version of section 1437p(d) explained as follows:

---

[5] Congress cannot, of course, supersede the Constitution.  The defense argument, however, was that it could override these statutory enactments that enable the assertion of constitutional claims in federal court.

The Committee recognizes that site and neighborhood standards are an outgrowth of fair housing laws that seek to prevent PHAs [Public Housing Authorities] or localities from concentrating public housing units in areas with already high numbers of minority or impoverished families.  This provision would only permit replacement housing to be built in minority or low-income neighborhoods when the overall effect would be to reduce the number of public housing units in such neighborhoods.   The provision would also reverse a troubling side effect of regulatory policy; redirecting development through impaction standards limits federal investment in desperately poor and minority neighborhoods.

S. Rep. 103-174, at 28 (Nov. 9, 1993), *reprinted in* 1994 U.S.C.C.A.N. 232, 261.

It is important to note that the "notwithstanding" provision applies only to the decision for units "to be built," which happens to be what is challenged in this case.   The housing policies that are adopted after the new units are rebuilt and residents move in would be subject to Title VIII challenges like any other public housing decisions.

### III.   CONCLUSION

For the reasons discussed above, Defendants' Joint Motion for Summary Judgment (Docket Entry No. 141) is **GRANTED** and McCardell's Motion for Reconsideration of the denial of the motion for preliminary injunction (Docket Entry No. 139) is **DENIED**.   The Title VIII claim asserted in Count Two of the Third Amended Complaint will be **DISMISSED WITH PREJUDICE**.   A separate final judgment will enter.

**SIGNED** this 5th day of August, 2014.

_____

Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.